BARNETT V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-134-CR

GARY MICHAEL BARNETT APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

Gary Michael Barnett appeals from his conviction by a jury for the offenses of indecency with a child and aggravated sexual assault of a child. 
See
 
Tex. Penal Code Ann.
 § 21.11 (Vernon 2003), § 22.021 (Vernon Supp. 2004-05).  In his first point, appellant argues that the trial court erred by conversing with the jurors during polling about their propensity to change their verdicts.  In his second point, appellant argues that the trial court erred by overruling his motion to quash the indictment.  We affirm in part and reverse and remand in part.  

II.  Background

Appellant was tried on two counts of aggravated sexual assault of a child (counts one and two) and two counts of indecency with a child (counts three and four).  The jury originally found appellant not guilty of counts one and two and guilty of counts three and four.  Appellant asked the court to poll the jury.  In response to appellant’s request, the trial court began asking each juror whether the verdict was his or her own.  The second juror polled responded that the verdict was not hers.  This prompted the trial court to inquire of each juror his or her verdict on each count.  From this, the trial court discovered that the verdicts for counts one and two were not unanimous; the jurors were split eleven-to-one in favor of not guilty on count one and eleven-to-one in favor of guilty on count two.  The trial court then informed the two hold-out jurors that “we do have a problem with both of you” and asked them whether, if sent back to the jury room to deliberate, they would be able to change their votes, or would they still maintain their votes “as it is.”  Both jurors said that a change was possible.  After the trial court sent the jurors back to the jury room to deliberate further, appellant made his first request for a mistrial on counts one and two, stating

Article 37.05 says that the Court can -- when you’re polling a jury, you can ask them if it’s their verdict, and if they answer in the affirmative, then you go on; and if it’s not, you send them back in the jury room.  And the Court’s done that, and I certainly don’t have any complaint about the Court even going over it with them in detail like you did here a second time.  

But what has concerned me, just kind of by the way it’s come out, is now we have two jurors who basically have opposite feelings in the way they voted on these two counts.  One of them, Mr. Etheridge, voted not guilty to both Count One and Two.  Mr. Jones voted guilty to Count One and Two.  But the way it all plays out, the entirety of the rest of the jury has voted guilty on Count Two.  So we have 11 to 1 for guilty there; we have 11 to 1 for not guilty on Count One.

It appears to me that those two jurors may compromise their verdict in order to achieve a liken result, and that concerns me.  I’m not sure it will be unanimous. 

The trial court denied appellant’s request for a mistrial. 

Nineteen minutes later, the jury found appellant not guilty on count one and guilty on counts two, three, and four.  Appellant made his second request for a mistrial, voicing his concern that the verdicts may have been compromised, and again the trial court denied his request.  The jury assessed appellant’s punishment at twenty years’ confinement for count two and ten years’ confinement, probated, for count three and count four.

III.  Jury Coercion 
 

In his first point, appellant complains that the trial court erroneously conversed with the jurors about their propensity to change their verdicts during polling at the guilt/innocence phase of the trial.  Appellant argues that the trial court’s actions violated article 37.05 of the Code of Criminal Procedure and forced a jury verdict that might not have occurred otherwise.
(footnote: 1)  
See Batten v. State
, 549 S.W.2d 718, 721 n.5 (Tex. Crim. App. 1977) (holding that polling of the jury should not extend beyond asking each juror whether the verdict is his or hers).  Appellant contends he was harmed by the trial court’s improper polling of the jurors because the jury ultimately found him not guilty on count one, but guilty on count two, assessing him twenty years’ confinement on count two, but community supervision on count’s three and four.  Lastly, appellant asks this court to reverse and dismiss his conviction as to count two only, arguing that a retrial is barred by double jeopardy principles because the trial court forced a verdict when the jury never stated it was deadlocked, and the jury could have ultimately found appellant not guilty on count two, which is what the original verdict was.  We will construe his point as asserting that the trial court erred in failing to grant his request for a mistrial in light of the trial court’s improper polling of the jury.  
See 
Tex. R. App. P.
 38.9;
 White v. State
, 50 S.W.3d 31, 45 (Tex. App.སྭWaco 2001, pet. ref’d) (construing points liberally to serve the interests of justice). 

A.  Preservation of Error

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State,
 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court’s refusal to rule.  
Tex. R. App. P.
 33.1(a)(2). 

1.  Timeliness

To be timely, an objection must be made as soon as the basis for the objection becomes apparent.  
Lagrone v. State
, 942 S.W.2d 602, 618 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 917 (1997).  The purpose for requiring a timely objection is to “allow the trial court to have the opportunity to make a determination and ruling on the complained of point and then to proceed with the trial under the proper procedural and substantive manners, as appropriately corrected by the trial court.”  
Janecka v. State
, 823 S.W.2d 232, 244 (Tex. Crim. App. 1992) (op. on reh’g), 
cert. denied
, 522 U.S. 825 (1997). 

The State argues that appellant did not preserve error because he failed to object when the trial court first exceeded the scope of article 37.05's polling procedure by asking each juror’s verdict on each count instead of immediately sending the jury back to deliberate once it became clear that the verdict was not unanimous.  However, article 37.05 specifically grants the court authority to individually determine whether the verdict comports with each juror’s verdict.  Also, appellant does not complain that the trial court violated article 37.05 by inquiring into each juror’s verdict on each count.  Rather, appellant specifically complains of the trial court’s asking the two hold-out jurors 
whether they could change 
their votes.  It is in relation to this alleged error that we will analyze the timeliness of appellant’s request for a mistrial.  

Here, the trial court questioned the two hold-out jurors about changing their votes and sent the jury back to the jury room to deliberate.  Appellant then requested a mistrial.  Allowing appellant to make his request when he did does not run afoul of the purpose for requiring a timely objection.  The trial court was in no better position to grant a mistrial immediately after the improper questioning than it was immediately after the jury was sent back to deliberate, when appellant actually made his request.  
Cf. Lagrone
, 942 S.W.2d at 618 (requiring that an objection to the admission of evidence be made as soon as the question calling for an objectionable answer is asked and before the answer is given, thereby allowing the trial court to sustain the objection and to prevent the objectionable answer).  Further, unlike an evidentiary objection that is best made before an answer is given, it is the asking of the question itself that creates the error when polling a jury.  Therefore, we hold that appellant’s request for a mistrial was sufficiently timely to preserve error.

2.  Specificity 

In his first request for a mistrial, appellant cited article 37.05 and expressed his concern that the two hold-out jurors may compromise their verdicts.  Likewise, as soon as the jury sent out notes naming the two jurors and stating that they had changed their votes accordingly, appellant made his second request for a mistrial, again asserting that the verdicts may have been compromised.  Although appellant’s requests were vague, they were more than adequate to apprise the trial court of the nature of appellant’s complaint.  
See Eisenhauer
 
v. State
, 754 S.W.2d 151, 159 (Tex. Crim. App. 1988) (holding that imprecise objection will be sufficient to preserve error if grounds for the objection are obvious to the court or opposing counsel).  We therefore conclude that appellant’s requests for a mistrial were sufficient to give the trial court notice as to the nature of his complaint, and we will address his point.   
 B.  Standard of Review for Jury Coercion
   

Claims of jury coercion often arise when a trial court attempts to encourage a deadlocked jury to reach a verdict.  
See Hollie v. State
, 967 S.W.2d 516, 518 (Tex. App.སྭFort Worth 1998, pet. ref’d).  In those situations, the trial court, administering what is known as an 
Allen
 charge, informs the jury, among other things, that if the jury is unable to reach a verdict, a mistrial will result, the indictment will still be pending, and there is no guarantee that a subsequent jury will find the questions easier to answer.  
See Allen
 
v. United States
, 164 U.S. 492, 501, 17 S. Ct. 154, 157 (1896);
 Odom v. State
, 682 S.W.2d 445, 447 (Tex. App.—Fort Worth 1984, pet. ref’d).  While an 
Allen 
charge is a generally accepted method of securing jury unanimity, a court must be careful to administer the charge in a manner that does not have an improperly coercive effect on jury deliberation.  
See Lowenfield v. Phelps
, 484 U.S. 231, 237, 108 S. Ct. 546, 550 (1988); 
Howard v. State
, 941 S.W.2d 102, 123 (Tex. Crim. App. 1996).    

Although not in the form of a traditional 
Allen
 charge, the trial court’s actions in the present case had the purpose and effect of encouraging a verdict.  Therefore, we will focus our analysis on the coercive effect the trial court’s actions may have had on jury deliberation by examining the trial court’s actions  “in [their] context and under all circumstances.”  
See Howard
, 941 S.W.2d at 123 (quoting 
Jenkins v. United States
, 380 U.S. 445, 446, 85 S. Ct. 1059, 1060 (1965)).  We must determine whether the trial court’s conversation with the two hold-out jurors pressured them into reaching a particular verdict or improperly conveyed the trial court’s opinion of the case.  
See Arrevalo v. State
, 489 S.W.2d 569, 571 (Tex. Crim. App. 1973); 
Martinez v. State
, 131 S.W.3d 22, 41 (Tex. App.སྭSan Antonio 2003, no pet.).  Factors to be considered include the nature of the case, the amount of evidence considered by the jury, and the time spent in further deliberation.  
See
 
Lindsey v. State
, 393 S.W.2d 906, 908 (Tex. Crim. App. 1965).

Courts have found jury coercion when, like the present case, the trial court continues to poll the jury after a lack of unanimity is revealed.  
See
,
 e.g., United States v. Spitz
, 696 F.2d 916, 917 (11th Cir. 1983).  In 
Spitz
,the 11th Circuit held that “[t]he questioning of the remaining jurors after the [dissenter] stated that the published verdict was not her verdict could have been perceived as attempted coercion of her.”  
Id
. at 918.  Also, the Texas Court of Criminal Appeals has said that a trial court might coerce a jury by identifying dissenting jurors and instructing them to reexamine their viewpoints.  
Howard
, 941 S.W.2d at 124.

Here, the trial court continued to extensively poll the jury even after the lack of unanimity was revealed.  This violated article 37.05, but was not objected to by appellant.  
See 
Tex. Code Crim. Proc. Ann.
 art. 37.05;
 Batten
, 549 S.W.2d at 721 n.5.  More importantly, however, the trial court singled out the two hold-out jurors, informed them that it had a “problem” with them, and asked them whether they could change their votes if sent back to deliberate further.  The two jurors changed their votes in less than twenty minutes and specifically informed the court of their changed votes individually.  We conclude that jury coercion is apparent from the trial court’s final conversation with the two hold-out jurors.  Therefore, we hold that the trial court erred by conversing with the hold-out jurors beyond the scope of article 37.05 and in a manner that had a coercive effect on the jury’s verdict.  We next examine whether the trial court should have granted appellant a mistrial because of this error.  

C.  Standard of Review for a Mistrial

We review a trial court’s denial of a request for a mistrial for abuse of discretion.  
See Ladd v. State
, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1070 (2000).  A trial court does not abuse its discretion if its decision is at least within the zone of reasonable disagreement.  
Montgomery v. State
, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).  A mistrial is as an extreme remedy for prejudicial events occurring during the trial process and should be granted only when residual prejudice remains after objections are sustained and curative instructions given.  
West v. State
, 121 S.W.3d 95, 106 (Tex. Crim. App.སྭFort Worth 2003, pet. ref’d).  

An appellant need not request a curative instruction, such as an instruction to disregard, to preserve error.  
See Young v. State
, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004).  However, an appellant who  requests a mistrial without first requesting a curative instruction forfeits appellate review of that class of events that could have been cured by such an instruction.  
Id
.  Therefore, we must determine whether the “error [was] so prejudicial that expenditure of further time and expense would [have been] wasteful and futile.” 
Ladd
, 3 S.W.3d at 567.  

Here, the trial court singled out the two hold-out jurors, told them that it had a problem with them, and asked them whether they could change their votes.  By doing so, the trial court indirectly communicated to the hold-out jurors that it 
wanted
 them to change their votes.  A jury typically gives particular weight to the language and conduct of a trial court.  
See Blue v. State
, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000).  Moreover, unlike situations in which an instruction to disregard was held to have cured the harm caused by improper comments from the trial court on the weight of the evidence, the present case involves comments by a trial court that 
directly
 influenced the jury’s verdict.  
See Fletcher v. State
, 960 S.W.2d 694, 701 (Tex. App.སྭTyler 1997, no pet.) (holding that the trial court’s instruction to disregard its comment was sufficient to remedy the harm, if any, to appellant by the comment).  Accordingly, we conclude that an instruction to disregard would not have cured the harm caused by the trial court, and therefore the trial court abused its discretion by denying appellant’s request for a mistrial.   

D.  Harmless Error

Having found error, we must also conduct a harm analysis to determine whether the error requires reversal of the trial court’s judgment.  
Tex. R. App. P.
 44.2; 
Lopez v. State
, 71 S.W.3d 511, 514 (Tex. App.སྭFort Worth 2002, no pet.).  If the error is constitutional in nature, we must reverse the judgment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment.  
See 
Tex
. R. App. P.
 44.2(a); 
Franklin v. State
, 138 S.W.3d 351, 354 (Tex. Crim. App. 2004).  We must disregard other types of error unless they affect appellant’s substantial rights.  
Tex. R. App. P.
 44.2(b); 
Franklin
, 138 S.W.3d at 354.  

Claims of jury coercion implicate the right to a fair and impartial jury as  guaranteed by the Sixth Amendment to the United States Constitution, as well as article V, section 10 of the Texas Constitution.  
See 
U.S. C
onst. 
amend. VI; 
Tex. Const. 
art. V, ྷ 10; 
Franklin
, 138 S.W.3d at 354; 
Odom
, 682 S.W.2d at 449.  Accordingly, we must reverse appellant’s conviction unless we find beyond a reasonable doubt that the trial court’s actions did not contribute to appellant’s conviction.  We are unable to make such a finding.  Had the trial court granted appellant’s request for a mistrial, appellant would have received a new trial on count two.  
See 
Tex. R. App. P.
 21.3.  Had a new trial been granted, the case against appellant would have been restored to its position before the former trial, and a subsequent jury might have found appellant not guilty as to count two.  
See 
Tex. R. App. P.
 21.9; 
State v. Bates
, 889 S.W.2d 306, 310 (Tex. Crim. App. 1994).  Therefore, we sustain appellant’s first point.

IV.  Indictment  

In his second point, appellant asserts that the trial court erred in failing to quash the indictment.  On March 17, 2003, appellant filed a motion to quash the indictment, which the trial court denied.  Appellant argues that the indictment was not sufficiently specific to ensure that he would be tried for the same conduct that the grand jury considered and that therefore the trial court erred in denying his motion to quash.  Appellant contends that his complaint is not with the “on or about” language in the indictment regarding the offense date, but rather with the specificity with which the actual conduct was alleged.   On its face, an indictment must allege “the facts necessary (1) to show that the offense was committed, (2) to bar a subsequent prosecution for the same offense, and (3) to give the defendant notice of precisely what he is charged with.”  
Terry v. State,
 471 S.W.2d 848, 852 (Tex. Crim. App. 1971).  Generally, an indictment provides sufficient notice if it tracks the language of the statute.  
Olurebi v. State
, 870 S.W.2d 58, 62 (Tex. Crim. App. 1994).  We review a trial court’s denial of a motion to quash an indictment for an abuse of discretion.  
County v. State
, 812 S.W.2d 303, 312 (Tex. Crim. App. 1989).  

Here, all four counts of the indictment track the language of the statutes.  
See 
Tex. Penal Code Ann.
 §§ 21.11, 22.021.  Appellant does not indicate exactly how the indictment failed to sufficiently specify the conduct in question, nor does he point to anything in the record to suggest that the evidence presented to the grand jury related to conduct other than that proven at trial.  
See Sledge v. State
, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997).  Appellant correctly notes that, in cases involving more than one act of sexual misconduct against a child, the State can be required to choose the act for which it will seek a conviction.  
See Crawford v. State
, 696 S.W.2d 903, 905 (Tex. Crim. App. 1985).  However,  appellant offers no evidence that this was not done in the present case.  Therefore, we hold that the trial court did not err in denying appellant’s motion to quash.  We overrule appellant’s second point.

V.  Conclusion

We reverse the trial court’s judgment as to count two only and remand that portion of this cause for a new trial.
(footnote: 2)  We affirm the trial court’s judgment as to counts three and four.    

TERRIE LIVINGSTON

JUSTICE

PANEL B: LIVINGSTON, DAUPHINOT, and WALKER, JJ.

DAUPHINOT, J. filed a concurring opinion

PUBLISH

DELIVERED:  January 20, 2005

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-134-CR

GARY MICHAEL BARNETT APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

CONCURRING OPINION

------------

While I agree with the outcome, I write separately because the improper 
Allen
(footnote: 1) charge should have been addressed under the 
Almanza
(footnote: 2) standard. Appellant complains that the trial court gave an improper oral instruction that was coercive.  The majority discusses his complaint in terms of constitutional error and forfeiture.  As the Texas Court of Criminal Appeals affirmed recently, it is settled law in Texas that jury charge error is to be reviewed under the 
Almanza
 standard, not Texas Rule of Appellate Procedure 44.2.
(footnote: 3)  Under 
Almanza
, forfeiture does not occur.
(footnote: 4)  Instead, properly preserved error requires reversal as long as the defendant suffers some harm; error that is not properly preserved requires reversal only if the defendant suffered egregious harm.
(footnote: 5)
 Although Appellant argues that he objected to the erroneous charge, the objection did not clearly inform the trial court that he was complaining of the erroneous jury instruction.  It was couched in terms of fearing “those two jurors may compromise their verdict in order to achieve a liken result.”  As to the procedure of discussing their verdicts, at trial, Appellant’s counsel stated, “I certainly don’t have any complaint about the Court even going over it with them in detail like you did here a second time.”  Appellant did not object to the charge being given orally.  If Appellant lodged a timely objection to the supplemental jury charge, it was too subtle for me to discern.  Consequently, I would analyze the trial court’s error under the egregious harm standard of
 Almanza
.
(footnote: 6)
 As harm, Appellant points out that the jury assessed twenty years’ penitentiary time on count two, the problematic verdict, but then granted community supervision on counts three and four. Note that had the verdict remained deadlocked, Appellant would have received a mistrial on count two, not a conviction.
(footnote: 7)  The jury assessed a prison sentence only on count two.  In the context of the entire case against Appellant, the trial court’s error in orally singling out the hold-out jurors and asking if they could change their votes caused Appellant egregious harm.  I would sustain Appellant’s first point and reverse and remand on this ground.

Because the majority improperly addresses Appellant’s jury charge complaint under Texas Rule of Appellate Procedure 44.2 and forfeiture, rather than 
Almanza
, I can concur only in the result.

LEE ANN DAUPHINOT

JUSTICE

PUBLISH

DELIVERED:  January 20, 2005

FOOTNOTES
1:
See 
Tex. Code Crim. Proc. Ann.
 art. 37.05 (Vernon 1981).  This article states, 

The State or the defendant shall have the right to have the jury polled, which is done by calling separately the name of each juror and asking him if the verdict is his.  If all, when asked, answer in the affirmative, the verdict shall be entered upon the minutes; but if any juror answer[s] in the negative, the jury shall retire again to consider its verdict.

Id
.

2:
Appellant offers no support for his argument that his retrial is barred by double jeopardy principles.  Moreover, the court of criminal appeals has held that even if judicial error prompted a criminal defendant to request a mistrial, the double jeopardy clause does not bar a retrial, as long as the error was not committed in bad faith in an attempt to provoke the defendant into requesting a mistrial.  
Fields v. State, 
627 
S.W.2d 714, 720 (Tex. Crim. App.), 
cert. denied
, 459 U.S. 841 (1982).  

1:
Allen v. United States
, 164 U.S. 492, 17 S. Ct. 154 (1896).

2:
Almanza v. State
, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh’g).

3:
Guevara v. State
, No. 0424-03, 2004 WL 2347793, at *6-7 (Tex. Crim. App. Oct. 20, 2004); 
Huizar v. State, 
12 S.W.3d 479, 484-85 (Tex. Crim. App. 2000) (op. on reh’g).

4:
Bluitt v. State
, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004).

5:
Almanza
, 686 S.W.2d at 171. 

6:
Id.
;
 see 
Tex. Code Crim. Proc. Ann
. art. 36.19 (Vernon 1981); 
Hutch v. State
, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

7:
See
 
Tex. Code Crim. Proc. Ann.
 art. 36.31.